IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

RENAULT WATKINS,           *

    Petitioner,         *

    v.                  *    CIVIL NO.: WDQ-11-1737
                             CRIMINAL NO.: WDQ-09-0534
UNITED STATES OF AMERICA,  *

    Respondent.         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Pending is Renault Watkins's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. No hearing is necessary. *See* Rule 8 of the *Rules Governing § 2255 Proceedings*. For the following reasons, his § 2255 motion will be denied.

I. Background

In August 2009, a confidential informant told Sgt. Parker Elliott of the Baltimore City Police Department that someone named "Pep" had been distributing heroin in the Park Heights area of Baltimore City. ECF No. 21, Ex. 1 at 7. The confidential informant claimed to have recently bought heroin from Pep, and seen him carry drugs out of a row house in the 2700 block of Prospect Street where Pep or his girlfriend lived.

*Id.* Knowing that Watkins had used the name Pep,[1] Sgt. Elliott showed Watkins's picture to the informant, who confirmed that Watkins and Pep were the same. *Id.*

The informant told Elliott that Watkins had been delivering heroin in two vehicles with Maryland license tags: an older model, four-door, white Mercury with tinted windows, and a dark-colored Chevrolet pickup truck. ECF No. 21, Ex. 1 at 7. Sgt. Elliott learned that the Chevrolet pickup was registered to Watkins at 2745 Prospect Street, and the white Mercury was registered to Sandra Witherspoon at the same address. *Id.* Police records showed that Watkins and Witherspoon had been involved in a domestic dispute there in 2005. *Id.* at 7-8.

Sgt. Elliott began surveilling 2745 Prospect Street. ECF No. 21, Ex. 1 at 8. "Several" times he saw both vehicles parked outside "at late night hours," and twice he saw Watkins enter the home. *Id.*

During the investigation, the confidential informant once told Sgt. Elliott that Watkins had parked the white Mercury at a shopping center in the 4400 block of Park Heights Avenue. ECF No. 21, Ex. 1 at 8. Sgt. Elliott went to the shopping center, found the car unoccupied, and saw Watkins enter the car and drive away about 40 minutes later. *Id.*

---

[1] Watkins had been arrested two years earlier in a house with several grams of heroin. ECF No. 21, Ex. 1 at 7.

On August 25, 2009, Sgt. Elliott provided this information in an application for a warrant to search Watkins. ECF No. 21, Ex. 1. Sgt. Elliott also swore that the confidential informant had recently provided other information that had led to the seizure of about $3,000 to $4,000 worth of heroin, firearms, and "large amounts" of cash. Id. at 8.

Judge James Mann of the District Court of Maryland for Baltimore City found probable cause that Watkins had violated Maryland drug laws, and signed a warrant authorizing Baltimore City police to search Watkins for drugs, paraphernalia, and money. Id. at 1.

On August 26, 2009, Baltimore City Police stopped Watkins in his pickup truck and searched him pursuant to the warrant. Plea Agreement, ECF No. 43 at 4. Police found 24.94 grams of heroin in Watkins's pants pocket, 3.14 grams of heroin in his left shoe, and 100.76 grams of heroin under the driver's seat. Id. Police also seized $4,312. Id.

After arresting Watkins, police obtained a warrant to search 3302 Hayward Avenue, where they had observed Watkins on several occasions. ECF No. 43 at 4. Inside, police found a garbage bag of used packing material, a digital scale, eight bars of a cutting agent, and a safe holding 1,579.98 grams of heroin and $36,510. Id.

On October 6, 2009, Watkins was indicted for possession

with intent to distribute one kilogram or more of heroin,[2] based on the heroin seized from 3302 Hayward Avenue. ECF No. 8; ECF No. 35 at 9. On March 16, 2010, he was charged with possession with intent to distribute 100 grams or more of heroin, based on the heroin found during the traffic stop. ECF No. 18; ECF No. 35 at 9.

On April 30, 2010, Watkins pled guilty to Count 1, and the Government dismissed Count 2. ECF No. 23 at 1; ECF No. 28 at 1. Watkins and the Government agreed that, ordinarily, his base offense level would have been 32 under the advisory sentencing guidelines. ECF No. 23 at 4. The Government, however, believed that Watkins was a career offender with a base offense level of 37. Id. The parties agreed that Watkins's offense level should be reduced three levels for acceptance of responsibility but did not agree on his criminal history. Id. at 4-5. They agreed that a sentence of 240 months imprisonment was appropriate. Id. at 5.

The Presentence Report (the "PSR") determined that Watkins was a career offender with a base offense level of 37. PSR 4, 8. Because Watkins had accepted responsibility, his offense level was reduced to 34. Id. at 4. With an offense level of 34 and criminal history category VI, Watkins's advisory sentencing guidelines range was 262-327 months. PSR 10.

---

[2] In violation of 21 U.S.C. § 841(a)(1).

At his April 30, 2010, guilty plea, Watkins swore that he had read and discussed the superseding indictment with his lawyers and was satisfied with their services. Rearraignment Tr. 7:12-8:8, Apr. 30, 2010. Watkins also swore that he had read and discussed the plea agreement with his lawyers, and understood and agreed to it. *Id.* 9:2-14. When the Court asked Watkins if anyone had threatened or forced him to plead guilty, this exchange followed:

> Watkins: I wouldn't -- I just felt more compelled to sign this plea, Your Honor.
>
> Court: Okay. Compelled, that's because you knew that, if you went to trial, the chances are you'd be convicted and face perhaps a stiffer punishment?
>
> Watkins: Yes, sir.
>
> Court: That's what you mean by "compelled"?
>
> Watkins: Yes, sir.
>
> Court: Okay. Other than that, anybody threaten you, force you to do this?
>
> Watkins: No, sir.
>
> Court: Now, of course outside of what's in the plea letter, has anybody made any other promises or predictions to you?
>
> Watkins: No, sir.

*Id.* 9:20-10:14. Watkins swore that he was pleading guilty voluntarily because he was guilty and "[did]n't stand a snowball['s] chance in hell to win this case." *Id.* 15:5-16.

On June 21, 2010, the Court sentenced Watkins to 240 months imprisonment and five years of supervised release. ECF No. 28.

On June 24, 2011, Watkins moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 30. On January 6, 2012, the Government opposed the motion.

II. Analysis

Watkins argues that this Court lacked subject matter jurisdiction, federal prosecutors improperly relied on evidence obtained by state police, the search warrant lacked probable cause, and his attorney provided ineffective assistance. ECF No. 30 at 2-3.

A. Subject Matter Jurisdiction

Watkins argues that this Court lacked subject matter jurisdiction because his case "concerned intrastate activities . . . investigated and processed sole[ly] by the [Baltimore City police]," which never "ced[ed] . . . authority over to the federal government." ECF No. 30 at 2.

Subject matter jurisdiction is a court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Because Watkins was charged with violating the federal Controlled Substances Act,[3] this Court had the power to adjudicate the

---

[3] 21 U.S.C. §§ 801, *et seq.*

case.[4]

That Watkins may have committed only "intrastate" drug activities did not divest this Court of jurisdiction. "A conviction under 21 U.S.C. § 841(a) does not require individualized proof that the crime substantially affected interstate commerce,"[5] because "Congress has authority under the Commerce Clause to criminalize the intrastate possession, distribution, and sale of controlled substances."[6] Accordingly, this claim is not a basis for relief.

B. Use of Evidence Obtained by State Police

Watkins argues that Baltimore City police "in essence executed a federal . . . warrant without the permission or assistance of federally deputized officers," and a state warrant that is not "executed by state officers and prosecuted by the state . . . lacks authority on its face in another jurisdiction." ECF No. 30 at 3. He contends that his arrest on a state warrant and prosecution in federal court "cause[d] a fruit of the poisonous tree effect," and the evidence should have been excluded. See id.

Because Watkins's conviction in federal court did not

---

[4] See 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction. . . of all offenses against the laws of the United States.").

[5] United States v. Lysaith, 49 F. App'x 407, 409 (4th Cir. 2002).

[6] United States v. Leshuk, 65 F.3d 1105, 1111-12 (4th Cir. 1995).

require a federal warrant executed by federal law enforcement,[7] this claim is not a basis for relief.

C. Probable Cause to Search Watkins

Describing the search warrant as "a Fruits of a Poisonous Tree Warrant," Watkins appears to argue that the warrant lacked probable cause because it was based on an informant's tip that Watkins "sold [h]eroin," and "at no time were there ever any controlled purchases, . . . meetings between [Watkins] and the alleged informa[nt], . . . marked money, [or] . . . phone calls between [Watkins] and the informant." ECF No. 30 at 3.

The Government counters that the warrant was supported by probable cause because police had met the informant face-to-face; the informant had "previously provided information leading to the seizure of heroin, currency, and firearms"; the officers corroborated information provided by the informant; the informant had identified Watkins by photo; and Watkins had been previously arrested for drug activity.[8]

The Fourth Amendment prohibits unreasonable searches and seizures, and no warrant may issue without probable cause. Probable cause exists for a search warrant when there is a "fair

---

[7] See, e.g., United States v. Williams, 977 F.2d 866, 869-70 (4th Cir. 1992) (local police officers were not required to execute a federal search warrant even though the defendants were prosecuted federally).

[8] ECF No. 35 at 5 n.1; Opp'n to Def.'s Pretrial Mots., ECF No. 21 at 4-9.

probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "In reviewing [a] [judge's] probable cause determination, [the Court] must accord great deference to the [judge's] assessment of the facts presented to him."[9]  "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [judge's] decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

The warrant to search Watkins was supported by probable cause. The confidential informant had met face-to-face with Sgt. Elliott, "expos[ing] himself [or herself] to accountability for making a false statement" and providing Sgt. Elliott "an opportunity to assess his [or her] credibility and demeanor."[10] Moreover, the informant had previously informed the police about large amounts of drugs, money, and firearms, *see* ECF No. 21, Ex. 1 at 8; the informant was a proven "reliable informant . . . entitled to far more credence than an unknown, anonymous tipster." *See United States v. Hodeg*, 354 F.3d 305, 311 (4th Cir. 2004). The informant had provided information about

---

[9] *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (internal citation and quotation marks omitted).

[10] *United States v. Perez*, 393 F.3d 457, 462 (4th Cir. 2004) (citation and internal quotation marks omitted).

Watkins's criminal activity that "could not have been given by anyone who occasionally watches the evening news." *United States v. Blauvelt*, 638 F.3d 281, 288 (4th Cir. 2011).

Sgt. Elliott further established probable cause by corroborating much of the informant's tips. Sgt. Elliott showed the informant a picture of Watkins to confirm that he and Pep were the same. ECF No. 21, Ex. 1 at 7. He confirmed that Watkins had registered the Chevrolet pickup truck to the address the informant had identified as the home of Watkins or his girlfriend. *Id.* Sgt. Elliott also confirmed that Watkins drove the Mercury, registered to the same address, and had entered the home several times. *Id.* "[C]onfirmation of [Watkins's] address, vehicle[s][,] and alias [gave] credence to the allegations of criminal activity." *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993). Watkins's criminal past added to the probable cause in support of the search warrant.[11]

Because the search warrant was supported by probable cause, this claim is not a basis for relief.

---

[11] "An officer's report in his affidavit of the target's prior criminal activity or record is clearly material to the probable cause determination[.]" *United States v. Bynum*, 293 F.3d 192, 197-98 (4th Cir. 2002) (internal citation and quotation marks omitted). *See also United States v. Miller*, 925 F.2d 695, 699-700 (4th Cir. 1991) (officer's knowledge that defendant "had been involved in illegal narcotics in the past" added to reliability of information).

D. Ineffective Assistance of Counsel

Finally, Watkins argues that his attorney provided ineffective assistance of counsel by falsely advising him about the plea agreement. ECF No. 30 at 3.

1. Standard of Review

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). Under *Strickland*, Watkins must prove that counsel's performance: (1) was deficient and (2) prejudiced his defense. *Id.* at 687; *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

Deficient performance requires Watkins to show that his attorney made errors so serious that the "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 686, 689. A court must be "highly deferential" in its review of an attorney's conduct, observing a "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Id.* at 689.

To demonstrate prejudice, Watkins must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because Watkins pled guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Moreover,

11

"in the absence of extraordinary circumstances, the truth of [Watkin's] sworn statements . . . during [his] [guilty plea] colloquy is conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005).

2. Watkins's Motion

Without elaboration, Watkins argues that his attorney provided ineffective assistance of counsel by telling him that the "plea agreement was [the] only option, and that if he didn't [accept], the penalties would be greater based on the informant's testimony." ECF No. 30 at 3.

The Government counters that Watkins has failed to show the extraordinary circumstances necessary to overcome his sworn statements at his guilty plea hearing, or that his attorney acted unreasonably in advising him about the plea offer. ECF No. 35 at 5-9.

Watkins's assertions of ineffective assistance of counsel contradict his sworn statements that he was satisfied with his attorneys, no one had forced him to plead guilty, and he was pleading guilty voluntarily because he "[did]n't stand a snowball['s] chance in hell to win this case." Rearraignment Tr. 7:12-8:8, 9:20-10:14, 15:5-16, Apr. 30, 2010. It is highly unlikely that Watkins would have insisted on going to trial. Because he has shown no extraordinary circumstances, the Court must accept the truth of his sworn statements at his guilty plea

and find that his claims of ineffective assistance are "palpably incredible" and "patently frivolous or false." See Lemaster, 403 F.3d at 221-22.

On the merits of his claims, Watkins is not entitled to relief. His attorney's alleged statements about the possible sentence if he did not plead guilty were a realistic appraisal of Watkins's difficult position; they were not ineffective assistance of counsel. Had he not pled, Watkins would have faced a mandatory sentence of 20 years (240 months),[12] and an advisory sentencing guidelines range of 360 months to life in prison.[13] By pleading, Watkins received a 240-month sentence -- far less than he would have faced under the advisory sentencing guidelines had he been convicted at trial. Accordingly, Watkins's attorney did not act unreasonably by telling him that he faced a greater penalty had he not pled. See Strickland, 466 U.S. at 686, 689.

Watkins has not alleged the prejudice necessary to establish ineffective assistance of counsel. He has not asserted that he would have proceeded to trial had his attorney not counseled him as he did. See Hill, 474 U.S. at 59. This

---

[12] See 21 U.S.C. § 841.

[13] See U.S. Sentencing Guidelines, Sentencing Table (2010). Watkins would have remained in criminal history category VI, but his offense level would not have been reduced from 37 to 34 for acceptance of responsibility.

claim is not a basis for relief.

E. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the Court's decision in a 28 U.S.C. § 2255 case. See 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"[14] or that "the issues presented were adequate to deserve encouragement to proceed further."[15] Denial of a COA does not prevent a petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Watkins has not made a substantial showing of the denial of his constitutional rights, this Court will not issue a COA.

---

[14] *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[15] *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotations omitted).

III. Conclusion

For the reasons stated above, Watkins's motion to vacate, set aside, or correct his sentence will be denied.

5/10/12
Date

William D. Quarles, Jr.
United States District Judge